UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FARMERS INSURANCE EXCHANGE, ) | |
| ) | Case No.: 2:09-cv-00462-GMN-GWF |
| Plaintiff, ) | |
| vs. ) | |
| ) | **ORDER** |
| LEONA FORKEY, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

On March 17, 2007, David H. Forkey ("the Decedent") was struck by a vehicle while he was crossing the street in a crosswalk, and Medicare paid his accident-related medical costs. As a result of his injuries, Mr. Forkey passed away the following day. Defendant Leona Forkey ("Forkey"), who is not and was not a Medicare beneficiary, made a claim against the insurance proceeds of the Underinsured Motorist ("UM") provision of the Farmers automobile insurance policy issued to the Decedent. The Department of Health and Human Services ("the Department") also made a claim against the UM provision of the Farmers policy, claiming that it was entitled to the $10,070.22 paid by Medicare for the Decedent's accident-related medical costs. This Court must now determine in what portions the $35,000 UM policy limit should be distributed between Forkey and the Department.[1]

**I.   PROCEDURAL HISTORY**

Plaintiff Farmers Insurance Exchange's Motion for Interpleader and for Discharge (ECF No. 7) was granted on June 15, 2009 by the District Court (ECF Nos. 22 & 24) and

---

[1] Defendant Forkey also claims that the "per occurrence" policy limit of $70,000, not $35,000, should have been deposited with the court. However, this issue has already been addressed by the Court in its Order (ECF No. 34) denying Forkey's Motion to Set Aside the Court's Order (ECF No. 28).

the remainder of the UM insurance proceeds--$23,333[2]--was deposited with the court (ECF No. 25). On June 29, 2009, Defendant Charles E. Johnson, who at the time was the acting Secretary of the U.S. Department of Health and Human Services, filed a Memorandum (ECF No. 20) in support of the Department's claim to the insurance proceeds and requested summary judgment in the Department's favor. The Memorandum also explained that Kathleen Sebelius had been confirmed by the United States Senate as Secretary of the U.S. Department of Health and Human Services on April 29, 2009. Because Rule 25(d)(1) of the Federal Rules of Civil Procedure permits the automatic substitution of a successor as a party without an application or showing of need, Secretary Sebelius was substituted for Charles E. Johnson in this lawsuit.

Also on June 29, 2009, the Decedent's widow, Defendant Leona Forkey, filed her Memorandum (ECF No. 21) in support of her claim to the proceeds. Defendant Sebelius filed her Response (ECF No. 26) to Forkey's claims on July 14, 2009, and Forkey filed her Reply brief (ECF No. 29) on August 3, 2009. On May 28, 2010, the case was reassigned to this Court, and, on August 30, 2010, Secretary Sebelius filed a Motion for Hearing on the pending motions (ECF No. 38). A hearing was held before the Court on September 20, 2010, at which the parties appeared to agree that no material facts are in dispute, but disagreed as to the manner in which the remaining UM proceeds should be distributed. The Department contends that it should receive all $10,070.22 of the money spent by Medicare; Forkey contends that the remaining funds should be apportioned on a *pro rata* basis.

## II.     LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't*

---

[2] Before Medicare was added to this lawsuit, the Clark County District Court had already awarded $11,667--one-third of the interpleaded $35,000--to Defendant Forkey as her intestate share under Nevada law.

*of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is proper if the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). As summary judgment allows a court to dispose of factually unsupported claims, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Id.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.*

**III. DISCUSSION**

    **A. The Parties' Arguments**

It is uncontested that the Decedent was insured under the Farmers UM policy, that Forkey was also insured under the policy as a family member, and that Medicare paid the Decedent's medical costs pursuant to the Medicare Secondary Payer Act ("MSP"). The only issue before the Court is how the remaining UM policy proceeds should be divided between Forkey and the Department.[3] The Secretary claims the Department is entitled, as a matter of law, to reimbursement of the $10,070.22 Medicare conditionally paid for the

---

[3] The estranged children of the Decedent--Darren Steven Forkey, David Edward Forkey, Donna Maria Forkey, Debbie Phaenis, and Diane Walton--were also named as defendants to this action. However, it appears that none of these individuals has ever made an appearance in this Court or asserted a claim to these proceeds.

Decedent's medical treatment. According to the Secretary, Medicare has a superior right to be reimbursed from the Policy pursuant to 42 U.S.C. §§ 1395y(b)(2)(B)(i)–(iii). The Secretary primarily relies on *Zinman v. Shalala*, 67 F.3d 841, 843 (9th Cir. 1995) and *State Farm Auto. Ins. Co. v. State of California*, 1997 WL 226229 (C.D. Cal. 1997) in support of her argument that the MSP requires the Department be paid in full even when other third-party claimants would necessarily have their claims reduced. Although the Secretary claims that the Clark County District Court erred in awarding Forkey $11,667 of the UM policy proceeds prior to the inclusion of Medicare in the lawsuit, the Secretary also concedes that no harm has been suffered yet because the remaining funds--$23,333--are sufficient to pay the Department's claim in full.

Forkey seeks recovery in her capacity as an "additional insured" under Nevada's wrongful death statute--NRS 41.085--for her "grief or sorrow, loss of probable support, companionship, society, comfort and consortium," rather than on behalf of the estate of the Decedent. She claims that she is only seeking recovery for her own losses, and not for Decedent's medical expenses, and that the remaining funds should be distributed on a *pro rata* basis such that the Department will not receive the entire amount it claims to be owed. She cites *Denekas v. Shalala*, 943 F. Supp. 1073, 1080 (S.D. Iowa 1996) to support her claim that "the MSP provisions do not give Medicare the right to obtain reimbursement of conditional payments from the claims of other parties who are not Medicare beneficiaries and whose claims are not for medical services to the beneficiaries." Forkey estimates that if the proceeds were to be distributed on a *pro rata* basis, the Department would be entitled to only about 2% of the policy limits, as Forkey estimates that her wrongful death claim is worth at least $500,000 while the Secretary's claim is for only $10,070.22. The Secretary disputes the case law cited by Forkey, claiming the cases cited by Forkey were wrongly decided and are irrelevant in the Ninth Circuit. The Secretary appears to concede that

when reimbursement is sought as a subrogation action the amount of Medicare's recovery is subject to state laws of apportionment, but argues that she is currently pursuing a direct action and therefore the Department's claim is not subject to the equitable rule of apportionment.

### B.    The Court's Analysis

When it was first enacted, Medicare was the primary payer for medical services supplied to a beneficiary, even when such services were covered by other insurance. *Zinman v. Shalala*, 67 F.2d 841, 843 (9th Cir. 1995).  However, in 1980, in response to rising Medicare costs, Congress enacted the Medicare Secondary Payer ("MSP") legislation, which requires Medicare to serve as the secondary payer when a beneficiary has overlapping coverage. *Id.*  Under the MSP provisions, when a Medicare beneficiary sustains an injury covered by a group health plan or liability, workers' compensation, automobile, or no-fault insurance, Medicare will conditionally pay for the beneficiary's medical expenses, *id.;* 42 U.S.C. § 1395y(b)(2)(B)(i), and may then seek reimbursement from the primary plan.

Section 1395y(b)(2)(B)(ii) of Title 42 of the United States Code establishes the Department's entitlement to reimbursement for medical expenses from an insurance plan-- such as the UM policy at issue here--that had the primary responsibility to provide for the medical care that was paid for by Medicare:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service.

The Department may recover this reimbursement via a direct action or through subrogation.  The Department will only be subrogated in limited circumstances, however.

Section 1395y(b)(2)(B)(iv) of the United States Code describes these limited circumstances, explaining: "The United States shall be subrogated (to the extent of payment made under this subchapter for such an item or service) to any right under this subsection of an individual or any other entity to payment with respect to such item or service under a primary plan." Thus, subrogation only occurs with regard to individuals or other entities that would be entitled to payment with respect to the "item or service" for which Medicare paid. In this case, the "item or service" for which Medicare paid was the Decedent's health care expenses. Because Forkey is not arguing that she has a right to payment for the Decedent's health care expenses under the UM plan, subrogation does not apply in this case.

However, the Department may still recover the conditional payments made by Medicare via a direct action. Section 1395y(b)(2)(B)(iii) of the United States Code provides the United States with this ability, stipulating:

> In order to recover payment under this subchapter for an item or service, the United States may bring an action against any or all entities that are or were required or responsible (directly, as an insurer or self-insurer, as a third-party administrator, as an employer that sponsors or contributes to a group health plan, or large group health plan, or otherwise) to make payment with respect to the same item or service (or any portion thereof) under a primary plan. . . . In addition, the United States may recover under this clause from any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity.

This aspect of the statute "grants [the Department] an independent right of recovery against any entity that is responsible for payment of or that has received payment for Medicare-related items or services." *Zinman*, 67 F.2d at 845.[4] "This independent right of recovery is

---

[4] It is of no consequence that the *Zinman* opinion cites to section 1395y(b)(2)(B)(ii), as opposed to 1395y(b)(2)(B)(iii), because Congress amended the numbering of the relevant portion of the statute from section 1395y(b)(2)(B)(ii) to section 1395y(b)(2)(B)(iii) in 2003, which was after the decision in *Zinman*.

separate and distinct from [the Department's] right of subrogation and is not limited by the equitable principle of apportionment stemming from the subrogation right." *Id.* (internal citations omitted).  In this case, the Department, through its Secretary, is seeking to recover the funds it spent on the Decedent's health care from proceeds of the primary plan responsible for bearing those medical costs:  the Decedent's Farmers UM insurance policy.  As such, the Department is using its right of direct action, and apportionment is inapplicable.

Further, the Department is entitled to priority over all other claimants when seeking full reimbursement of its conditional payments. *Filippi v. U.S. Dept. of Health and Human Services*, 138 F. Supp. 2d 545, 547 (S.D.N.Y. 2001); *accord Myers v. Central Ins. Co.*, No. 1:08-CV-96, 2009 WL 77258, at *7 (N.D. Ind. Jan. 8, 2009).  Forkey disputes this principle and argues that the Department can recover no more under the policy than the Decedent could under state law.  Thus, Forkey argues, when other parties lay a claim to the pool of funds from which the Department would be seeking reimbursement, the Department's claim would be subject to apportionment, just as the Decedent's would have been.  However, a district court in this Circuit has already rejected an argument similar to Forkey's, explaining that the "[t]he Ninth Circuit stated that federal law grants [the Department] a right to recover the insurance proceeds independent of the beneficiary's right, and [the Department's] regulations permit the agency to seek full reimbursement." *State Farm Auto. Ins. Co. v. State of California*, No. CV 96-6960, 1997 WL 226229, at *2 (C.D. Cal. Feb. 26, 1997).  Indeed, to hold otherwise would be to ignore the distinction the Ninth Circuit has drawn between subrogation and direct action rights, and to go against the Ninth Circuit's conclusion that the direct action right "is not limited by the equitable principle of apportionment stemming from the subrogation right." *Zinman*, 67 F.2d at 845.  The Department's right to priority over other claimants arises from the principle of

*Chevron* deference.  According to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), a court must examine two issues before accepting an agency's construction of a statute: (1) whether "Congress has spoken to the precise question at issue," *id.* at 842–43, and (2) if not, whether the agency's answer is based on a permissible construction of the statute, *id.* at 843.  The MSP statute is silent as to whether the Department gets priority when recovering conditional payments, *Myers*, 2009 WL 77258, at * 6, so the Court must address the second issue.

The Department's interpretation of the relevant sections of the MSP legislation is found in the Medicare Secondary Payer Manual, which lists the guidelines established to implement the Medicare sections of Social Security laws.  According to Section 40.1, Medicare's Recovery Rights:

> Medicare has a statutory direct right of reimbursement from the liability insurance as well as any entity that has received payment directly or indirectly from the proceeds of a liability insurance payment.  Medicare's recovery rights take precedence over the claims of any other party, including Medicaid. Medicare's recovery right is superior to other entities including Medicaid because Medicare's direct right of recovery is explicitly prescribed in Federal law and other entities' rights are based on either State law or subrogation rights.

Thus, the Department has interpreted the MSP to afford the Department priority over all other claimants when it seeks to recover conditional payments made by Medicare.

An agency's construction of a statute is permissible if it is "rational and consistent with the statute." *N.L.R.B. v. United Food and Commercial Workers Union*, 484 U.S. 112, 123 (1987).  With the enactment of the MSP legislation in 1980, Congress intended for Medicare to become a secondary payer and to be able to be reimbursed if any primary payer could pay instead. *United States v. Baxter International, Inc.,* 345 F.3d 866, 888 (11th Cir. 2003); *United States v. Geier,* 816 F. Supp. at 1336 (W.D. Wis. 1993) (indicating

that Medicare was meant to be a secondary payer in order to achieve major fiscal savings in the Medicare program).  This stemmed from the MSP's "overarching statutory purpose of reducing Medicare costs." *Zinman*, 67 F.3d at 845.  The Department's construction of the statute--which helps ensure that the Department is fully reimbursed for the payments made by Medicare--is fully consistent with these legislative purposes and with a plain language reading of the statute.  Further, the construction provides a practical and economical way for the Department to recover its conditional payments.  The Department's ability to have priority over other claimants, regardless of another claimant's allegations of damages, avoids the commitment of federal resources to the task of ascertaining the dollar amount of each element of a claimant's alleged damages. *See Zinman*, 67 F.3d at 845 (advancing this argument with regard to allowing the Department to recover the full amount of its expenditure, even though the primary plan would not have sufficient funds to cover the Department's expenditures and the beneficiary's claimed damages).  Accordingly, this Court concludes that the Department's construction is rational and consistent with the statute, and finds that the Department's direct action claim to the funds from the UM policy takes precedence over all other claims.  Thus, the Department is entitled to receive $10,070.22 from the UM policy proceeds.

## **CONCLUSION**

IT IS HEREBY ORDERED that Defendant Kathleen Sebelius's Motion for Summary Judgment, styled as a Memorandum in Support of Claim at ECF No. 20, is GRANTED.  The Department shall receive $10,070.22 of the remaining proceeds from the UM policy, and Ms. Forkey shall receive the balance.

DATED this 29th day of December, 2010.

_____
Gloria M. Navarro
United States District Judge